**STATE v. BAILEY**

[145 N.C. App. 13 (2001)]

STATE OF NORTH CAROLINA v. RICKY NELSON BAILEY, Defendant

No. COA00-627

(Filed 17 July 2001)

**1. Confessions and Other Incriminating Statements— improper inducement—statements of officers—charges and punishments—better to tell the truth**

The trial court did not err in a prosecution for statutory rape (for which defendant was acquitted) and statutory sexual offense by denying defendant's motion to suppress his statement to officers where defendant contended that the statement resulted from improper inducement. The only factor weighing in favor of a finding of improper inducement is the fact that defendant apparently had no prior experience with the criminal justice system. Defendant was not in custody and was free to leave, he was not deceived, the duration of the interview does not appear to have been excessively long and the nature of the interview does not appear to have been improperly coercive; there were no physical threats or shows of violence and there was no evidence that defendant's mental condition was impaired; statements that things would go easier if defendant gave a truthful statement do not amount to improper promises; and informing defendant of the crimes for which he might be charged and the range of punishment does not constitute improper inducement.

**2. Indictment and Information— subsequent information— different offense**

There was no error in a prosecution arising from the sexual abuse of a child where defendant was originally indicted for two counts of statutory rape or sexual offense against a person 13 to 15 years old; and information on one count alleging the offense of indecent liberties was included in the record and may have been filed (but may have been submitted to the trial court as a part of plea bargain which was rejected); and defendant contends that the court erred by proceeding to trial on the two original indictments after the information was filed. Assuming that the information charging indecent liberties was filed, defendant appealed only from his conviction on the other indictment and the issue was not properly before the Court of Appeals. Moreover, the circumstances addressed by N.C.G.S. § 15A-646, which requires dismissal of a superseded indictment, are not present here because

the information charged defendant with an entirely different offense and did not supersede either of the original indictments

### 3. Criminal Law— plea arrangement rejected—terms not modified

The requirements of N.C.G.S. § 15A-1023(b) were not violated in a prosecution arising from the sexual abuse of a child where defendant argued that the State proceeded upon the original indictment after a plea arrangement was rejected without modifying the terms of the arrangement. However, this statute merely requires the court to afford the parties an opportunity to modify the terms of a rejected plea agreement if both parties so desire; here, there is no indication that the State wished to modify the terms of the arrangement or that the court denied the State the opportunity to do so.

### 4. Attorneys— criminal case—motion to withdraw denied— unlimited written notice of representation

The trial court did not err in a prosecution arising from the sexual abuse of a child by denying a motion to withdraw by defendant's attorney where the attorney had made a written notice of representation pursuant to N.C.G.S. § 15A-141 without indicating the limited extent of his representation. The attorney was thus obligated to represent defendant at all subsequent stages of the case. N.C.G.S. § 15A-141(1), (3).

### 5. Constitutional Law— effective assistance of counsel

A defendant accused of sexually abusing his daughter did not receive ineffective assistance of counsel from an attorney whose motion to withdraw had been denied where defendant did not establish that any particular error by the attorney directly affected the outcome of the trial. Any error in seeking to suppress only a written statement and not a similar oral statement would not have affected the outcome of the trial because other evidence of defendant's confession was admitted.

Appeal by defendant from judgment entered 3 November 1999 by Judge Dennis J. Winner in Rutherford County Superior Court. Heard in the Court of Appeals 25 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General E. Clementine Peterson, for the State.*

*Neville S. Fuleihan, for defendant-appellant.*

**STATE v. BAILEY**

[145 N.C. App. 13 (2001)]

HUDSON, Judge.

On 28 September 1998, defendant Ricky Nelson Bailey was indicted on two counts of violating N.C.G.S. § 14-27.7A (1999) ("Statutory rape or sexual offense of person who is 13, 14, or 15 years old.") for allegedly sexually abusing his minor daughter. The two indictments were designated as 98 CRS 9156 and 98 CRS 9157.[1] On 20 November 1998, attorney Neville S. Fuleihan filed a "Notice of Representation" stating that he would represent defendant in 98 CRS 9156. On 7 December 1998, defendant signed a "Waiver of Counsel" form in 98 CRS 9157, waiving his right to all assistance of counsel, and stating that he desired to appear on his own behalf. In March of 1999, a proposed plea arrangement was presented to the trial court. The proposed plea provided that the State would dismiss the charge in 98 CRS 9156, that the State would amend the charge in 98 CRS 9157 to taking indecent liberties with a child pursuant to N.C.G.S. § 14-202.1 (1999), and that defendant would plead guilty to taking indecent liberties with a child. However, the proposed plea arrangement was rejected by the trial court.

On 11 May 1999, prior to trial, defendant moved to suppress a written statement transcribed by Detective Mike Hollifield of the Rutherford County Sheriff's Department and signed by defendant on 28 July 1998. On 4 August 1999, Fuleihan filed a "Motion for Withdrawal by Attorney," requesting permission to withdraw as defendant's attorney in 98 CRS 9156. The motion states that Fuleihan was hired only for the purpose of representing defendant in the plea arrangement, and that defendant was without funds to pay Fuleihan or to pay for necessary "investigative work." Also on 4 August 1999, defendant filed an "Ex-Parte Motion for Funds for Investigation," requesting $2,500.00 to retain an investigator to investigate facts pertinent to the sexual abuse allegations. The motion requesting funds was granted on 24 August 1999. Fuleihan's motion to withdraw was apparently denied.

Prior to trial on 2 November 1999, the trial court conducted a hearing to address defendant's motion to suppress. At the conclusion of the hearing, the trial court denied defendant's motion to suppress.

---

1. We note that the indictments in 98 CRS 9156 and 98 CRS 9157 allege only "statutory sexual offense" pursuant to G.S. § 14-27.7A, whereas defendant was tried on one count of statutory sexual offense pursuant to G.S. § 14-27.7A and one count of statutory rape pursuant to G.S. § 14-27.7A. However, defendant was ultimately convicted only on the statutory sexual offense charge and was acquitted on the statutory rape charge, and this appeal pertains only to the statutory sexual offense conviction.

STATE v. BAILEY

[145 N.C. App. 13 (2001)]

Defendant was then tried on the two original charges. Defendant was convicted of statutory sexual offense in 98 CRS 9156, but was found not guilty of statutory rape in 98 CRS 9157. Defendant appeals the judgment in 98 CRS 9156. On appeal, defendant raises three assignments of error.

[1] Defendant first assigns error to the trial court's denial of his motion to suppress the statement made on 28 July 1998. Defendant argues that the trial court should have granted the motion because the statement was the result of improper inducement and was therefore involuntary. The *voir dire* testimony presented during the hearing to address the motion consisted of the testimony of Special Agent Steven Miller of the State Bureau of Investigation, Detective Hollifield, and defendant.

Agent Miller testified to the following facts. Miller administered a polygraph test to defendant on 28 July 1998 while he was alone with defendant and while Hollifield was watching by closed circuit television in an adjacent room. Following the test, Miller told defendant that if defendant gave a statement admitting to the sexual abuse, the district attorney would have the option of offering a plea bargain to defendant. Miller also told defendant that neither he nor Hollifield could speak on behalf of the district attorney regarding the way in which defendant's case would ultimately be handled. Defendant then orally made a statement to Miller admitting to the sexual abuse of his daughter. When Hollifield entered the room, Miller communicated defendant's statement to Hollifield and then left the room.

Defendant testified to the following facts. Defendant got a full night's sleep before he went in to take the polygraph test on 28 July 1998. After he took the polygraph test, Miller told him that he had failed the test. Miller then told him about a situation in which an individual had killed himself after an incident involving the sexual abuse of a minor child. Miller told defendant that Hollifield felt that if defendant pled guilty to the offense it would help him, and that Hollifield would help him "as much as he could." After Hollifield entered the room where defendant had taken the polygraph test with Miller, Hollifield took defendant to another room and got defendant a cup of coffee. Defendant then repeated his statement to Hollifield who transcribed the statement which defendant then signed. Defendant specifically testified that Miller did not make any promises to him. Defendant also testified that Hollifield and Miller didn't tell him exactly what would happen, but that what they did tell him made

him believe that if he pled guilty, he would have "a better chance at not going to prison."

Detective Hollifield testified to the following additional facts. Defendant had voluntarily traveled to Asheville for an interview with Hollifield and Miller. Defendant was not in custody at the time he made the statement and was free to leave. Prior to defendant providing the statement, Hollifield told defendant that if defendant gave a truthful statement about what had happened, "everything would probably have a little less consequence to it" and "[t]hings would probably go easier." Hollifield specifically testified that he did not make any promises to defendant in order to obtain the statement. He also testified that he explained to defendant that if defendant admitted to committing sexual abuse, "there was a good chance" he would be able to go on probation and go through sex offender treatment and otherwise be able to lead a normal life with his family.

At the conclusion of the *voir dire* testimony, the trial court made the following oral findings and conclusion:

> That on the occurrence of the [] polygraph examination of the defendant, that SBI Agent Miller who was the polygraph operator informed defendant that the result of the test was that he was not telling the truth. Told him it would be better if he told the truth, or words to that effect. Made no promises to him whatsoever. Informed the defendant that ultimately the decisions that would be made on this case would be made by the DA's office and not by law enforcement officers.

> That the defendant admitted orally essentially the facts that are contained in this later written statement made to Officer Hollifield.

> That that oral statement was made at a place and time that Officer Hollifield was able to observe and hear the oral statement made.

> That subsequent to that in a conference at the same place with Officer Hollifield, Officer Hollifield made statements which indicated to the defendant that if the defendant made a written statement admitting what's been alleged that Officer Hollifield thought things would go easier for him. That he did discuss with him sex offender treatment and probation, but that he made no promise or anything from which it could logically be inferred by

the defendant that he had made a promise that those things would occur; particularly since Officer Miller had just previously told him that ultimate decisions in the case would be made by the DA's office and not law enforcement.

The Court concludes from this that there was no improper inducement made by either of the officers and that consequently . . . the statement made to Miller and the statement made to Hollifield were voluntarily made.

In challenging the trial court's denial of his motion to suppress, defendant argues that his statement was the result of improper inducement because it was based on promises by Hollifield and Miller that he would receive relief from the charges he faced if he confessed to the sexual abuse. We disagree.

"The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." *State v. Corpening,* 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993). Here, the trial court found that although both Hollifield and Miller indicated to defendant that it would be better if he told the truth, there were no promises made to defendant, and it was made clear to defendant that the district attorney, rather than either Miller or Hollifield, would ultimately determine how to handle the case. These findings are fully supported by competent evidence in the record. Hollifield and Miller both testified that they did not make any promises to defendant in order to induce his statement. Moreover, defendant testified that he was told only that he would have "a better chance at not going to prison" if he confessed. Because we hold that the findings are supported by competent evidence, they are binding on appeal.

Based on these findings, the court concluded as a matter of law that there was no improper inducement by either Miller or Hollifield and that the statements were given voluntarily. This conclusion is a fully reviewable legal question. *State v. Hyde,* 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000), *cert. denied,* —— U.S. ——, 148 L. Ed. 2d 775 (2001). We believe the trial court's conclusion is supported by the findings. A confession is either voluntary or involuntary. *See State v. Cabe,* 136 N.C. App. 510, 513, 524 S.E.2d 828, 830, *appeal dismissed and disc. review denied,* 351 N.C. 475, 543 S.E.2d 496 (2000). The vol-

untariness of a defendant's confession is determined by viewing the totality of the circumstances. *State v. Wallace*, 351 N.C. 481, 520, 528 S.E.2d 326, 350, *cert. denied,* —— U.S. ——, 148 L. Ed. 2d 498 (2000). Factors to be considered in determining whether a confession was voluntary include whether the defendant was in custody, whether he was deceived, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the defendant's mental condition. *See Hyde*, 352 N.C. at 45, 530 S.E.2d at 288. In addition, the physical environment and the overall manner of the interrogation may be considered. *State v. Thibodeaux*, 341 N.C. 53, 58, 459 S.E.2d 501, 505 (1995).

Here, the only factor weighing in favor of a finding of improper inducement is the fact that defendant apparently had no prior experience with the criminal justice system. Every other relevant factor weighs against a finding of improper inducement. Defendant was not in custody, but rather appeared voluntarily for the purpose of taking a polygraph test. Defendant was therefore free to leave at any time. There was no evidence that defendant was in any way deceived by Miller or Hollifield. The duration of the interview does not appear to have been excessively long, and the nature of the interview does not appear to have been improperly coercive. In fact, defendant was offered and accepted a cup of coffee during the interview. Defendant testified that he got a full night's sleep before the interview, and there was no evidence that defendant's mental condition was impaired. In addition, there were no physical threats or shows of violence.

As to the statements by Hollifield that if defendant gave a truthful statement about what had happened, "everything would probably have a little less consequence to it" and "[t]hings would probably go easier," such statements do not amount to improper promises. *See State v. Pruitt*, 286 N.C. 442, 458, 212 S.E.2d 92, 102 (1975) (an "improper inducement generating hope must promise relief from the criminal charge to which the confession relates"). Rather, we believe such statements are similar to those examined in *State v. Richardson*, 316 N.C. 594, 342 S.E.2d 823 (1986). In *Richardson*, a detective and an assistant district attorney expressed to the defendant that the district attorney, who would ultimately determine how the defendant would be prosecuted, usually responded favorably when a defendant cooperated. However, the defendant was not promised a lesser sentence in return for his cooperation. The Court

held that these statements did not constitute improper inducement. *Id.* at 604, 342 S.E.2d at 830. Furthermore, Hollifield's statements that if defendant admitted to committing sexual abuse "there was a good chance" he would be able to go on probation and go through sex offender treatment and otherwise be able to lead a normal life with his family did not render defendant's subsequent statement involuntary. Merely informing a defendant of the crimes for which he might be charged and the range of punishment does not constitute improper inducement. *See id.* at 602, 342 S.E.2d at 829-30. In sum, the circumstances indicate that defendant's confession was voluntary and was not the result of improper inducement. This assignment of error is overruled.

**[2]** Defendant next contends the trial court committed plain error by proceeding to trial on the two original indictments after an information was subsequently filed in 98 CRS 9157 alleging the offense of taking indecent liberties with a child. Although the record does include an information in 98 CRS 9157 charging defendant with taking indecent liberties with a child, it is not clear that this information—which we note is not dated—was ever, in fact, filed. Rather, it appears from the record that the information was submitted to the trial court as part of the proposed plea arrangement, which was ultimately rejected. However, even assuming *arguendo* that the information in 98 CRS 9157 charging defendant with taking indecent liberties with a child was actually filed, defendant's argument is without merit.

Defendant's argument relies upon N.C.G.S. § 15A-646 (1999), which states:

> If at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, upon the defendant's arraignment upon the second indictment or information, the count of the first instrument charging the offense must be dismissed by the superior court judge. The first instrument is not, however, superseded with respect to any count contained therein which charged an offense not charged in the second indictment or information.

G.S. § 15A-646. We need not review the standard employed where plain error is alleged because we conclude no error occurred.

We believe that defendant's argument is inconsistent with the meaning and purpose of G.S. § 15A-646. Occasionally there is an error in the form of an indictment which, if left uncorrected, would provide the defendant with grounds for relief. To address the problem, the State must file a subsequent indictment to correct the error. G.S. § 15A-646 requires that, in such situations, the original indictment must be dismissed at the time the defendant is arraigned upon the superseding indictment or information, thereby precluding potential problems of double jeopardy. *See State v. Carson*, 320 N.C. 328, 333, 357 S.E.2d 662, 665-66 (1987).

The circumstances to which the statute is addressed are not present here. The original indictments charged defendant with two separate counts of violating G.S. § 14-27.7A. The subsequent information in 98 CRS 9157 alleges that defendant committed the offense of taking indecent liberties with a child pursuant to G.S. § 14-202.1, an entirely different offense than the offense charged in the original indictments. Therefore, the information did not "supersede" either of the original indictments because it did not "charg[e] the defendant with an offense charged or attempted to be charged in the first instrument" as required by G.S. § 15A-646.

As the State points out in its brief, this assignment of error is also without merit because it involves the effect of the State's filing a subsequent information in 98 CRS 9157. Since defendant appeals only from his conviction in 98 CRS 9156, this issue is not properly before us on appeal.

**[3]** Defendant also argues that the requirements of N.C.G.S. § 15A-1023(b) (1999) were violated here. That statute provides, in pertinent part: "If the judge rejects the [plea] arrangement . . . [he] must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly." G.S. § 15A-1023(b). Defendant contends that, following rejection of a plea arrangement, the statute requires that the State must modify the terms of the plea arrangement, and that the State may not proceed against the defendant upon the original indictment. We do not so interpret the statute. The statute merely requires the court to afford the parties an opportunity to modify the terms of a rejected plea if both parties so desire. Here, there is no indication that the State wished to modify the terms of the plea arrangement, or that the trial court denied the State an opportunity to do so. This assignment of error is overruled.

**[4]** Defendant lastly argues that the trial court erred in denying attorney Fuleihan's motion to withdraw, and that, as a result, defendant was denied effective assistance of counsel at trial. Fuleihan filed a Notice of Representation in 98 CRS 9156 on 20 November 1998. This written notice of entry was expressly made pursuant to subsection (1) of N.C.G.S. § 15A-141 (1999), which provides that an attorney may enter a criminal proceeding by filing "a written notice of entry with the clerk indicating an intent to represent a defendant in a specified criminal proceeding." G.S. § 15A-141(1). Fuleihan did not avail himself of subsection (3) of that statute, which allows an attorney to enter a criminal proceeding "for a limited purpose" by filing a written notice with the clerk indicating the limited extent of his representation. G.S. § 15A-141(3). "An attorney who enters a criminal proceeding without limiting the extent of his representation pursuant to G.S. 15A-141(3) undertakes to represent the defendant for whom the entry is made at all subsequent stages of the case until entry of final judgment, at the trial stage." N.C.G.S. § 15A-143 (1999). Thus, once Fuleihan undertook to represent defendant in 98 CRS 9156 without limiting the extent of his representation, Fuleihan was obligated by statute to represent defendant at all subsequent stages of that case through entry of final judgment. The only remedy for an attorney seeking to withdraw from the representation of a criminal defendant in a particular case, where no limitation on the representation has been established at the outset, is found in N.C.G.S. § 15A-144 (1999). Fuleihan's motion to withdraw was made pursuant to this statute, which provides that "[t]he court may allow an attorney to withdraw from a criminal proceeding upon a showing of good cause." G.S. § 15A-144.[2]

**[5]** "In order to establish prejudicial error arising from the trial court's denial of a motion to withdraw, a defendant must show that he received ineffective assistance of counsel." *State v. Thomas*, 350 N.C. 315, 328, 514 S.E.2d 486, 495, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). To establish ineffective assistance of counsel, a defendant

---

2. Although there is no indication in the record that the trial court expressly ruled on the motion to withdraw, we note that the motion was filed along with an "Ex-Parte Motion for Funds for Investigation" on 4 August 1999. In ruling on the motion requesting funds for investigation, the trial court entered an order authorizing "Counsel for the Defendant" to retain a private investigator, and that order was accompanied by a form entitled "Order of Assignment or Denial of Counsel," which states that the applicant (defendant) is entitled to receive funds for investigation expenses, and further states: "The Court is not appointing counsel. Defendant has retained counsel." Thus, despite the absence of an express ruling in the record on Fuleihan's motion to withdraw, we presume that the trial court denied the motion.

must satisfy a two-prong test which was promulgated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

> [D]efendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms. . . . Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (citations omitted).

Here, defendant contends that attorney Fuleihan committed the following errors: (1) not limiting the extent of his representation pursuant to G.S. § 15A-141, thereby rendering defendant vulnerable to the consequences of representation by inexperienced counsel; (2) not requiring the State to follow the mandate of G.S. § 15A-1023; and (3) not objecting to Agent Miller's testimony regarding the oral statement made by defendant to Agent Miller, on the grounds that defendant was not informed during discovery that Agent Miller would so testify. The first alleged error amounts to the following circular proposition: defendant received ineffective assistance of counsel because his attorney made the error of not limiting the extent of his representation, which error resulted in the attorney representing defendant at trial and providing ineffective assistance of counsel. This argument is without merit because it fails to establish any particular error by Fuleihan at trial that directly affected the outcome of the trial, and such a showing is necessary to establish ineffective assistance of counsel.

The substance of the second alleged error was addressed and rejected above. To reiterate, G.S. § 15A-1023(b) does not require the State to modify the terms of a plea arrangement after the plea arrangement has been rejected; it merely guarantees that the parties will be afforded an opportunity to modify the terms of the arrangement if both the State and the defendant wish to do so. The second alleged error is, therefore, also without merit.

The final alleged error appears to pertain to the fact that defendant's motion to suppress sought only to suppress defendant's written statement to Detective Hollifield, and did not seek to suppress defendant's similar oral statement to Agent Miller. Even assuming

**IN RE HEIL**

[145 N.C. App. 24 (2001)]

*arguendo* that the failure to move to suppress defendant's oral statement to Miller constituted an error on the part of defendant's attorney, we are not persuaded that the trial result would have been different absent the error. This is because even if defendant had successfully sought to suppress Miller's testimony regarding defendant's oral statement, evidence establishing that defendant confessed to the sexual abuse would still have been admitted at trial through three sources: (1) Hollifield's testimony regarding the oral statement made by defendant to Agent Miller; (2) the written statement transcribed by Hollifield and signed by defendant; and (3) defendant's own testimony at trial admitting to having made the statement.[3] This assignment of error is overruled.

No error.

Judges WYNN and TIMMONS-GOODSON concur.

---

3. At trial, defendant admitted to having made the statement transcribed by Hollifield and signed by defendant, although he maintained that he did not commit the sexual abuse and that his confession statement was made in an effort to avoid going to prison.